Dennis PARKINS, Petitioner,

v.

TEXAS FARMERS INSURANCE
COMPANY, Respondent.

No. C–1381.

Supreme Court of Texas.

Jan. 12, 1983.

Rehearing Denied March 2, 1983.

Burt Berry, Dallas, for petitioner.

Larry L. Gollaher, Dallas, for respondent.

ROBERTSON, Justice.

Dennis Parkins sued Texas Farmers Insurance Company under the Texas Deceptive Trade Practices—Consumer Protection Act, Tex.Bus. & Com.Code Ann. §§ 17.41 *et seq.* He alleged that Farmers represented to him that they would insure a dwelling he owned in the event of fire and that this was a deceptive act or practice because they issued a homeowner's policy which carried an exclusion that the premises covered must be owner-occupied. Consequently, when the house burned, coverage was denied because it was rented. The questions before this Court are whether Parkins proved that Farmers misrepresented his policy coverage and whether he was adversely affected thereby.

After the jury answered all special issues for Parkins, the trial court granted Farmers a judgment non obstante veredicto. The court of appeals, 641 S.W.2d 254, affirmed the judgment N.O.V. on the ground that Parkins, in order to show that he had been adversely affected under the DTPA, was required to prove that his loss would have been covered under a standard fire policy then available from Farmers and failed to do so. While we find that the court of appeals applied the wrong rule of law on this point, we nevertheless affirm the judgments of the courts below on the ground that Parkins failed to adduce any evidence

that Farmers misrepresented the terms of his insurance coverage.

As a prerequisite to obtaining financing for a real estate purchase in 1976, Parkins, a licensed real estate broker, had to secure insurance for the building. Parkins testified that he contacted Dick Upham, Farmers' authorized agent, and asked him for "the cheapest insurance I can get." Following this conversation, Parkins received a payment plan agreement. In a column headed "Farmers Insurance Group Company" was the notation "Tex. Farmers Fire." He soon thereafter received a Memorandum of Policy which referred to the policy as a standard "Homeowners Form B" and contained the following language as part of the printed form:

> The above premises of the described dwelling are the only premises where the named insured or spouse maintains a residence, other than business property or farms.

Parkins did not receive a copy of the policy itself as it was held by the mortgagee. His coverage was renewed thereafter annually.

Whether Parkins lived in the house himself when the original policy was issued was disputed. At trial he testified that he received mail at the address but never made it his residence. On cross-examination, however, Farmers introduced Parkins' deposition testimony wherein he stated that he maintained it as his home, keeping furniture and personal belongings there and spending the night there. Parkins also testified in the deposition, when asked where his other residence was at this time, that he didn't remember.

Eventually Parkins rented the house as a residence to several tenants. While it was thus occupied on March 9, 1979, it burned. In his proof of loss statement Parkins stated that Upham had originally written him an "HOB" policy. When he filed this proof of loss, Parkins received a letter denying his claim on the ground that he had a homeowners policy designed to cover the building

in the event of fire only so long as it was owner occupied.

Parkins argues here that the court of appeals erred in affirming the trial court's judgment N.O.V. because he was not required to plead and prove the terms of any policy to maintain a cause of action under the DTPA. That is, Parkins asserts that he is not seeking to recover on the homeowners policy, which admittedly does not apply here, or a breach thereof; rather, he bases his claim on an alleged misrepresentation that constituted a deceptive act.

■ We agree with Parkins' contention that he need not prove a specific policy in order to show that he was adversely affected by Farmers' conduct.[1] In *Royal Globe Ins. Co. v. Bar Consultants, Inc.*, 577 S.W.2d 688 (Tex.1979), a DTPA case wherein the defendant insurance company also asserted that the insured had failed to prove that it was injured as a result of the company's representation that the building in question was covered, this Court held:

> [T]here is evidence that Bar Consultants was "adversely affected" and "injured" when it relied on the misrepresentations of coverage each time the policy was renewed. The injury to Bar Consultants was that it believed it was covered by a policy of insurance from any loss caused by vandalism when it was not so covered.

*Id.* at 694. Thus in determining whether the insured was adversely affected, the Court speaks only to reliance on a misrepresentation rather than to specific terms under a policy. We therefore hold that Parkins was not required to offer any policy, that he either held or believed he held, into evidence in order to prove that he was injured under the DTPA.

■ Although we disagree with the court of appeals holding regarding proof of causation in this suit, we nevertheless must affirm the judgment of the court of appeals on the ground that Parkins failed to prove that Farmers did in fact misrepresent the

---

1. This language was amended in 1979 (after this cause of action arose) to read: "a consumer may maintain an action where any of the following constitute a producing cause of actual damages . . . ." § 17.50(a).

terms of his insurance coverage. Parkins contends that Farmers led him to believe that his house was protected against fire loss when it was not. The record reveals, however, that Parkins only proved that he was required to obtain "some" insurance on the house by his mortgage company, that he requested the "cheapest insurance I can get," and that Farmers did in fact issue a policy providing fire coverage so long as the house was owner occupied.

Parkins nowhere shows that Farmers ever assured him of coverage against fire loss under the circumstances present here or that they would issue a particular kind of policy. This case is therefore clearly distinguishable from *Royal Globe Ins. Co. v. Bar Consultants, Inc., supra,* where it was undisputed that the agent had expressly told the insured at the time the policy was written that he was "totally covered" against any losses from vandalism.

Rather than proving a misrepresentation on the part of Farmers, Parkins has instead shown only that he fell within an exclusion of his policy. Because there is no evidence that Farmers misrepresented the terms of Parkins' insurance coverage, we affirm the judgment of the court of appeals.

## ON MOTION FOR REHEARING

RAY, Justice, dissenting.

I respectfully dissent.

The jury in this case found that Texas Farmers Insurance represented to Parkins that a fire insurance policy would be issued on a designated building and that such representation was a "deceptive trade practice." After the jury answered all four special issues in favor of Parkins, the trial judge rendered a judgment non obstante veredicto for Farmers. In order to sustain the action of the trial court in granting the judgment non obstante veredicto, it must be determined there is no evidence upon which the jury could have made its finding. *Dodd v. Texas Farm Products Co.,* 576 S.W.2d 812 (Tex.1979). All evidence must be considered in the light most favorable to support the jury verdict, and every reasonable inference from the evidence is to be indulged in favor of the verdict. *Douglass v. Panama, Inc.,* 504 S.W.2d 776 (Tex.1974). All contrary evidence and inferences are to be rejected. *Martinez v. Delta Brands, Inc.,* 515 S.W.2d 263 (Tex.1974).

Parkins sued under the Deceptive Trade Practices and Consumer Protection Act. Section 17.44 of the Act specifically provides that "[t]his subchapter shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against false, misleading, and deceptive business practices . . . ." Tex. Bus. & Com.Code Ann. § 17.44.

In reviewing the evidence in the light most favorable to Parkins, the following facts must be considered. Parkins testified he told the agent, Upham, that he was not going to be living in the building. The issuance of a homeowners policy which requires the building be owner occupied, was not compatible with the information given the agent. Furthermore, Parkins was given a receipt for payment which recited the word "Fire" and listed a policy number. This receipt was introduced into evidence and recites on two different lines:

| FARMERS INSURANCE GROUP COMPANY | Policy Number |
| TEX FARMERS | |
| FIRE | 70760603 |

If a person seeking insurance coverage went to an agent's office and informed the agent he would not be living in the building, that he wanted the cheapest coverage to satisfy the mortgage company's requirement for insurance and was given a receipt which contained the word *fire* on a separate line, I believe he would have every right to

think he had a fire policy without the requirement that it be owner occupied. The receipt was in evidence and was considered by the jury. This exhibit had the capacity or tendency to deceive an average or ordinary person, even though that person may have been ignorant, unthinking or credulous. This was the definition of "False, Misleading or Deceptive Acts or Practices" given the jury in the court's charge.

Parkins stated that he definitely told Upham that he was not going to use the house as his residence. There was testimony that Parkins had not heard the word "homeowners" until after the fire. A homeowners policy which includes fire insurance was not mentioned. He testified he believed the receipt was evidence of fire insurance and that he had "what I asked for, fire." A witness to the request for fire insurance coverage stated Parkins asked for "just plain fire insurance." The jury had the benefit of a photograph of the building and did not believe that a reasonable and competent insurance agent would issue a homeowners policy on such a building after being told by the owner that he was not going to make it his home, but was buying it as an investment.

The insurance agent did not appear as a witness during trial, but parts of his deposition were introduced into evidence. Parkins, on the other hand, testified and was cross-examined in front of the jury. Farmers attempted to impeach this testimony by introducing portions of his deposition. It is within the sole province of the trier of fact, who had the opportunity to observe the demeanor of the witnesses on the stand, to determine the credibility of the witnesses and the weight to be given their testimony. *Royal v. Cameron,* 382 S.W.2d 335 (Tex.Civ. App.—Tyler 1964, writ ref'd n.r.e.). The jury in this case who observed Parkins' demeanor was entitled to believe his testimony concerning the insurance policy.

I respectfully submit the majority erred in holding there was no evidence that Farmers misrepresented the terms of Parkins' insurance coverage. The receipt with the words "*Fire*" on a separate line with a policy number is some evidence of misrepresentation. Since this receipt was introduced into evidence, the jury was free to find, as they did, that it was deceptive. The majority's opinion would require the insured to be knowledgeable not only about the insurance business, but the companies comprising the Farmers Insurance Group and the forms they utilize. This was clearly not the intent of the Legislature in enacting the Deceptive Trade Practices Act.

Accordingly, I would reverse the judgments of the courts below and render judgment for Parkins.