STATE FARM FIRE & CASUALTY
COMPANY and Linda Goss,
Appellants,

v.

Lee GROS and Sharon Gros, Appellees.

No. 3–90–101–CV.

Court of Appeals of Texas,
Austin.

Nov. 6, 1991.

Rehearing Overruled Dec. 18, 1991.

Scott R. Kidd, Brown Maroney & Oaks Hartline, Austin, for appellants.

Mark L. Kincaid, Longley & Maxwell, Austin, for appellees.

Before POWERS, ABOUSSIE and KIDD, JJ.

KIDD, Justice.

In the summer of 1987, following a heavy rain storm, a defective retaining wall collapsed, and the resulting landslide substantially damaged the home of Lee and Sharon Gros ("Appellees"). Appellees turned to their homeowner's insurance carrier, State Farm Fire & Casualty Company ("State Farm"), for compensation. Relying on several exclusions within the insurance policy, State Farm denied all liability. Based on the jury's verdict, the district court rendered judgment for Appellees. State Farm and its agent Linda Goss (Agent "Goss") bring this appeal.

## THE CONTROVERSY

In early 1983, Appellees broke ground on their home which was to be built on a steep hillside overlooking Lake Austin. The building site was a sloped lot that required a cut in the land in order to construct the home. It was necessary for the contractor to build a retaining wall to support the cut-face of the hillside and protect the house. Because they were operating on a tight budget, Appellees had the first retaining wall built only the length of the house.

In 1984, a heavy rain dislodged several large boulders on that part of the hillside beyond the house that had been excavated but was not retained. The boulders did not damage the house, but they did block the driveway and had to be removed.

At all times, Appellees insured their house with State Farm through State Farm's local recording agent Linda Goss. As a result of the landslide in 1984, Appellees contacted Agent Goss to see if their homeowner's policy would pay for removing the boulders. The representations that Agent Goss made regarding this 1984 incident form the crux of the present controversy.

At trial, there was a dispute in the testimony about those representations. Lee Gros testified, and his wife confirmed, that Agent Goss had explained that removal was not covered because the boulders had not actually hit the house. Further, Lee Gros testified that Agent Goss reassured and represented to him that if the rocks from the hillside had damaged the house, their homeowner's coverage would have provided protection from any damage or loss sustained. At trial, Agent Goss denied having made any such representations to Lee Gros; she testified that she had explained that the landslide exclusion in the policy would specifically exclude any type of homeowner's coverage for such damage. As will be later discussed, the jury resolved this disputed testimony in favor of Appellees.

In June 1987, after continuous heavy rains, Sharon Gros heard something hit the house in the early hours of June 4th. Lee Gros investigated and found that the supersaturated retaining wall, the backfill, and the hillside itself (which the wall was supposed to retain), were moving toward the house and had already broken through the garage wall. Appellees and their daughter were forced to seek refuge with neighbors. When Appellees returned to their house, they found the retaining wall had collapsed allowing a flood of rocks, mud, trees, and other debris to penetrate the house, crushing load-bearing walls and knocking the house off-center.

Relying upon the landslide exclusion, the inherent vice exclusion, and the damage from surface waters exclusion, State Farm denied all liability under the policy for the claim. Appellees could not afford the repairs and were forced to sell their damaged house at a loss of $117,000.00.

Appellees filed suit against State Farm and Agent Goss for breach of contract, deceptive trade practices, unfair insurance practices, and breach of the duty of good faith and fair dealing. The trial court submitted the case to the jury under the Deceptive Trade Practices Act (DTPA), Tex. Bus. & Com.Code Ann. §§ 17.41–17.63 (1987 & Supp.1991) (since amended) and Tex.Ins.Code Ann. art. 21.21, § 16(b)(1) (1981 & Supp.1991) (since amended) on theories of misrepresentation by Agent Goss, misrepresentation by State Farm, and unconscionable conduct by State Farm, all of which the jury found in Appellees' favor. The jury also found that State Farm *knowingly* engaged in an unconscionable course of action and that the loss was caused by defects in the retaining wall. Based upon the jury verdict, the district court rendered a monetary judgment jointly and severally against State Farm and Agent Goss for the lost value of the house, out-of-pocket expenses, mental anguish, prejudgment interest, and attorney's fees. The district court also rendered judgment against State Farm for additional discretionary damages found by the jury as permitted under the DTPA, premised upon the jury's finding that State Farm had acted "knowingly."

From this judgment State Farm and Agent Goss have perfected this appeal.[1] State Farm alleges eleven points of error. In points of error one through eight, State Farm challenges the legal and factual sufficiency of the evidence to support certain jury findings. In points of error nine through eleven, State Farm assigns as error the district court's submission of the breach of contract elements since the court had sustained State Farm's motion for instructed verdict on that portion of the case.

Appellees assign as cross-points of error the district court's failure to award mandatory treble damages and a sufficient amount of prejudgment interest. Appellees also assign as contingent cross-points of error the district court's action in granting the instructed verdict on the breach of contract theory.

### DISCUSSION AND HOLDING

#### I.

##### Appellants' Points of Error

■ State Farm's first eight points of error challenge the legal and factual sufficiency of the evidence supporting the jury verdict. The standards of review are well settled for reviewing jury findings. In re-

---

1. Unless otherwise required, appellants will be identified collectively as State Farm.

viewing a "no evidence" challenge, we consider only the evidence and reasonable inferences drawn therefrom which, when viewed in their most favorable light, support the jury's finding. The appellate court must disregard all evidence and inferences to the contrary. *Alm v. Aluminum Co. of Am.*, 717 S.W.2d 588, 593 (Tex.1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965). Any probative evidence supporting the finding is sufficient to overrule the point of error. *See also* Robert Calvert, *"No Evidence" and "Insufficient Evidence Points of Error"*, 38 Tex.L.Rev. 361, 364 (1960); William Powers, Jr. and Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence"*, 69 Tex. L.Rev. 515, 522 (1991).

■ We will sustain an "insufficient evidence" point of error only if, after reviewing the entire record, the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *E.g., Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

### 1. Misrepresentation of Agent, Linda Goss

■ State Farm's first point of error asserts that the evidence was legally and factually insufficient to support the jury finding that Agent Goss misrepresented the terms or benefits of the homeowner's insurance policy.[2] A review of the trial record shows the evidence before the jury. Lee Gros testified that after the boulders fell into the driveway in 1984, he met with Agent Goss at the site and asked her if his State Farm policy would cover the cost of removing the boulders. Agent Goss told him that the policy would not cover the removal because the boulders had not damaged the house. Agent Goss represented at that time that if the boulders or trees had hit the house, the resulting damage would be covered. That evening, Lee repeated to his wife, Sharon, what he had

been told by Agent Goss. Sharon Gros confirmed this by her testimony at trial.

When the retaining wall collapsed in 1987 and rock, trees, mud, and other debris hit the house, Sharon Gros called State Farm. Sharon Gros testified that she reported the loss in exactly the words Agent Goss had assured Appellees would invoke coverage under their homeowner's policy. State Farm's claim forms, introduced into evidence at the trial, confirmed the exact wording used.

Agent Goss denied making this representation in 1984 but the jury chose to disbelieve her. There was evidence in the record, which the jury was entitled to consider, namely, Agent Goss failed to make any written record of the version she alleged of the conversation she had with Lee Gros, even though her file contained contemporaneous notes of other much less important conversations.

Considering only the evidence favorable to the jury's finding, and disregarding all evidence to the contrary, we hold that there was sufficient evidence upon which the jury could conclude that Agent Goss did misrepresent the terms or benefits of the homeowner's insurance policy in question. State Farm's first point of error is overruled.

### 2. Misrepresentation of State Farm

■ State Farm's second point of error attacks the legal and factual sufficiency of the jury finding that State Farm committed an unfair or deceptive act or practice by misrepresenting the terms or benefits of the homeowner's policy. The same evidence relating to Agent Goss also supports the jury finding as to State Farm. A corporation like State Farm can act only through its agents, and the jury was so instructed. At all times the evidence revealed that Linda Goss was acting as a local recording agent for State Farm. State Farm entered into a stipulation that

---

**2.** State Farm concedes that, as to this point of error, the only argument properly before the Court is the "no evidence" point. State Farm failed to attack in its motion for new trial the factual sufficiency of the evidence supporting

the jury finding in question 2 and therefore that point has been waived. Tex.R.Civ.P.Ann. 324(b) (Supp.1991); *Airway Ins. Co. v. Hank's Flight Center, Inc.*, 534 S.W.2d 878, 879 (Tex.1976).

it was bound by the actions of its agent, Linda Goss. Thus, when State Farm's agent misrepresented coverage, that misrepresentation made her individually liable, *Light v. Wilson,* 663 S.W.2d 813, 815 (Tex. 1983) (Spears, J., concurring), and that statement was also a misrepresentation by State Farm that made it liable as well. *Royal Globe v. Bar Consultants,* 577 S.W.2d 688, 694 (Tex.1979). State Farm's second point of error is overruled.

### 3. *State Farm's Unconscionable Conduct*

State Farm's third point of error challenges the legal and factual sufficiency of the evidence supporting the jury finding that State Farm engaged in an unconscionable action or course of action.

■ The evidence previously detailed shows that State Farm's agent misrepresented the homeowner's policy and coverage. Evidence of a misrepresentation is sufficient to support a finding of unconscionable conduct. *Rendon v. Sanchez,* 737 S.W.2d 122, 125 (Tex.App.1987, no writ) (unconscionability based on misrepresentation of restaurant profits); *Tri–Continental Leasing Corp. v. Law Office of Richard W. Burns,* 710 S.W.2d 604, 607 (Tex. App.1985, writ ref'd n.r.e.) (unconscionability based on misrepresentation of equipment performance); *see also Woods v. William M. Mercer, Inc.,* 769 S.W.2d 515, 518–19 (Tex.1988) (insurer's failure to disclose that agents' authority to write coverage had been withdrawn was unconscionable).

■ It is undisputed that State Farm refused to pay the benefits that the jury found Agent Goss promised. A failure to pay promised benefits or a failure otherwise to perform as promised supports a jury finding of unconscionable conduct. *HOW Insurance Co. v. Patriot Fin. Servs. Inc.,* 786 S.W.2d 533, 540–41 (Tex.App. 1990, writ denied) (insurer's failure to make repairs and misrepresentation of coverage was unconscionable); *Southern Life & Health Ins. Co. v. Medrano,* 698 S.W.2d 457, 460 (Tex.App.1985, writ ref'd n.r.e.) (insurer's refusal to pay benefits was unconscionable).

The evidence was legally and factually sufficient to support the jury's finding that State Farm acted unconscionably. State Farm's third point of error is overruled.

### 4. *Causal Connection–Producing Cause*

In its fifth and related points of error, State Farm challenges the legal and factual sufficiency of the evidence supporting the jury findings that the misrepresentations and unconscionable course of conduct of State Farm and Agent Goss were a *producing cause* of damages sustained by Appellees. The testimony from the Appellees was that had they known in 1984 that their homeowner's policy would not provide coverage for landslides, they would have tried to obtain other insurance coverage. However, State Farm introduced testimony that other insurance coverage was simply not available in the insurance market. Therefore, the crux of State Farm's argument regarding producing cause is that even if Agent Goss had misrepresented the benefits and coverage of the Appellees' homeowner's policy, it was not a producing cause of damage because Appellees could not have obtained insurance coverage of that type from any other insurance company. We conclude that State Farm's argument is without merit for two reasons.

■ First, in a suit involving a violation of the DTPA as well as article 21.21 of the Texas Insurance Code, it is not necessary for the plaintiff to prove that the promised coverage could have been obtained from another source in order to establish producing cause. The Texas Supreme Court specifically rejected the argument State Farm advances in *Royal Globe Insurance Co. v. Bar Consultants,* 577 S.W.2d 688 (Tex. 1979), and *Parkins v. Texas Farmers Insurance Co.,* 645 S.W.2d 775 (Tex.1983).

In *Royal Globe,* a local recording agent for Royal Globe represented to the insured that coverage was provided for vandalism. When Royal Globe later denied a vandalism claim, the insured sued under the DTPA and article 21.21 of the Texas Insurance Code alleging damages as a result of the pre-loss misrepresentation. The supreme court held:

[T]here is evidence that Bar Consultants was "adversely affected" and "injured" when it relied on the misrepresentations of coverage by Embry [the local recording agent] at the time of the initial policy in 1973 and impliedly made each time the policy was renewed. *The injury to Bar Consultants was that it believed it was covered by a policy of insurance from any loss caused by vandalism when it was not so covered.*

577 S.W.2d at 694 (emphasis added).

In *Parkins,* the insured obtained a jury finding that he had been *adversely affected* [3] by misrepresentations regarding coverage. The Dallas Court of Appeals upheld a judgment n.o.v. rendered against the insured "[b]ecause Parkins failed to produce any evidence that his fire loss would have been covered by *any fire policy ...."* *Parkins v. Texas Farmers Ins. Co.,* 641 S.W.2d 254, 255 (Tex.App.1982), *rev'd,* 645 S.W.2d 775 (1983) (emphasis added.) The supreme court granted review solely to express its disapproval of that language. Relying on *Royal Globe,* the supreme court held; "We agree with Parkins' contention that he need not prove a specific policy in order to show that he was adversely affected by Farmers' conduct." 645 S.W.2d at 776. After quoting the language from *Royal Globe* that is set forth above, the supreme court in *Parkins* continued; "We therefore hold that Parkins was not required to offer any policy, that he either held or believed he held, into evidence in order to prove that he was injured under the DTPA." *Id.* Thus, the supreme court standard established in *Royal Globe* and *Parkins* does not require the plaintiff to prove other available insurance coverage in order to establish producing cause.

■ We also reject State Farm's argument for a second reason. State Farm considers insurance coverage to be the only protection that the Appellees could have provided to avoid their damage. We disagree. Had Agent Goss not misrepresented the terms of Appellees' homeowner's insurance coverage and had Appellees realized in 1984 that they would not be covered in the event of a landslide, Appellees might have re-engineered or re-tested the retaining wall to make sure that it was structurally sound, knowing that a retaining wall failure would not be covered by insurance protection. Therefore, since there were other steps that Appellees could have taken in lieu of insurance coverage that might have prevented this loss, Appellees were not required to establish alternative insurance coverage as the *only* basis for discharging their burden of proof on the issue of producing cause. The evidence was legally and factually sufficient to support the jury findings on producing cause. State Farm's fifth and related points of error on the "producing cause" issue are overruled.

### 5. Damages

#### A. Discretionary Damages

■ Following the amendment to the DTPA in 1979, the jury was permitted to award additional *discretionary damages* in the event of a finding that the defendant had acted *knowingly.* State Farm contends in its fourth and seventh points of error that the jury findings are legally and factually insufficient to support the finding that State Farm *knowingly* engaged in an unconscionable action or course of action. The court defined knowingly as follows:

"Knowingly" means actual awareness of the falsity, deception, or unfairness of the conduct in question. Actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness.

Despite her testimony to the contrary, the jury found, that in 1984, Agent Goss promised coverage. Having found that she

---

**3.** *Royal Globe* and *Parkins* were both decided under the pre–1979 DTPA when the causation standard was whether the consumer was "adversely affected." 1973 Tex.Gen.Laws, ch. 143, sec. 1, § 17.50(a), at 326 (Tex.Bus. & Com.Code Ann. § 17.50(a) (since amended)). The post–1979 DTPA standard is whether the defendant's conduct was a "producing cause" of damages.

1979 Tex.Gen.Laws, ch. 603 sec. 4, § 17.50(a), at 1329 (since codified at Tex.Bus. & Com.Code Ann. § 17.50(a)). These two differing causation standards have been held to be substantially equal. *See Hurst v. Sears, Roebuck & Co.,* 647 S.W.2d 249 (Tex.1983); *see also Riojas v. Lone Star Gas Co.,* 637 S.W.2d 956, 959 (Tex.App. 1982, writ ref'd n.r.e.).

made this misrepresentation, the jury could reasonably infer that Goss knew she was not telling the truth in 1987 and thereafter, when she continued to deny her 1984 representations. The jury could reasonably believe that Goss was actually aware in 1987 that these denials were false. The knowledge of its agent is attributable to State Farm. *La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 563 (Tex.1984).

 There was additional evidence to suggest that following the Appellees' loss, a State Farm adjuster had requested that Agent Goss prepare a self-serving memorandum of her 1984 conversation with Lee Gros. Appellees contended that this action by State Farm constituted an intentional "cover-up." If believed by the jury, this contention would have sustained a finding of "knowing" conduct. We overrule State Farm's fourth and seventh points of error.

### B. Mental Anguish Damages

In its eighth point of error, State Farm attacks the evidence supporting mental anguish damages awarded to Lee and Sharon Gros as legally and factually insufficient. Appellees both testified to mental anguish directly caused by State Farm's failure to pay the promised benefits.

 Sharon Gros testified that following the landslide the family had no place to live. She described this experience as "very difficult" and "disconcerting" and that Appellees were "bothered a lot" and that she reached a point of "total defeat." More than two years following the loss of their home, Sharon Gros testified that it "still hurt."

Lee Gros expressed similar feelings. He testified that they felt Agent Goss lied when she told them that they would be covered in the event of this type of disaster and then State Farm refused to pay the benefits under the policy. Lee Gros testified that he and the family suffered "a lot of grief" and "a lot of stress" when they had to face the hard decision of being forced to sell the home they had worked to build because of State Farm's refusal to live up to the representations of its agent.

 Mental anguish damages are intangible in nature and are best left to the trier of fact. *E.g., Pope v. Moore*, 711 S.W.2d 622, 624 (Tex.1986). There is no specific evidence that needs to be elicited in order to show mental anguish damages. We hold, based upon the evidence in this record, that there was sufficient evidence to justify the jury's award for mental anguish damages.

State Farm also asserts that mental anguish damages are not recoverable in this case because there is no evidence that State Farm acted "knowingly." This argument is without merit. In addition to our holding that the evidence was sufficient to support the jury finding that State Farm acted "knowingly," we reaffirm our previous holding in *HOW Insurance* that it is doubtful that "knowing misconduct" is any longer a necessary prerequisite for recovery of mental anguish damages. *HOW Insurance*, 786 S.W.2d at 543.[4] Therefore, State Farm's eighth point of error is overruled.

### 6. *Breach of Contract Theory*

At the conclusion of the evidence adduced at trial, the district court granted State Farm's motion for instructed verdict on the breach of contract theory, holding that the landslide exclusion contained in the policy relieved State Farm of any contractual liability. The court submitted the case to the jury pursuant to Appellees' DTPA and Insurance Code theories of recovery. However, in Question 1 of the charge, the court inquired factually as to whether the retaining wall was defective, and hence, the cause of the resulting landslide. The Appellees' theory pursuant to the breach of contract issue was that the landslide resulted from a defective retaining wall rather than natural causes. Appellees contended,

---

4. As we observed in *HOW Insurance*, with the elimination of the physical harm or manifestation rule and with the recognition of the tort of "negligent infliction of mental anguish" by the Texas Supreme Court in *St. Elizabeth Hospital v.*

*Garrard*, 730 S.W.2d 649 (Tex.1987), willful, intentional, or knowing misconduct by the tortfeasor may no longer be required. 786 S.W.2d at 543.

therefore, that the landslide exclusion in the insurance policy was not applicable. The jury answered Question 1 favorably to Appellees, finding that a defect in the retaining wall caused the landslide. However, the district court rendered its final judgment based upon the favorable DTPA and Insurance Code findings since these causes of action yielded a greater damage award, and treated the jury finding in Question 1 as surplusage. *See Boyce Iron Works, Inc. v. Southwestern Bell Tel. Co.*, 747 S.W.2d 785, 787 (Tex.1988).

In three related points of error—nine, ten, and eleven—State Farm contends the trial court erred in submitting Question 1 to the jury since the instructed-verdict ruling on the Appellees' breach of contract theory rendered the issue immaterial. In addition, State Farm claims harm by contending that the submission of Question 1 focused jury attention on the breach of contract theory and permitted the Appellees to argue the case as if the breach of contract were still in issue. State Farm's points are without merit.

We note initially that State Farm failed to present this complaint to the district court before the charge was submitted to the jury. We have examined the record and find no objection from State Farm to the effect that Question 1 was immaterial or that its submission would unfairly focus the jury's attention on the breach of contract theory. Thus, since the point was never presented to the district court, it has been waived. Tex.R.Civ.P.Ann. 274 (Supp. 1991). *See Allen v. American Nat'l Ins. Co.*, 380 S.W.2d 604, 609 (Tex.1964); *Houston Bell & Terminal Ry. Co. v. Wherry*, 548 S.W.2d 743, 750 (Tex.Civ.App.1976, writ ref'd n.r.e.), *cert. dismissed w.o.j.*, 434 U.S. 962, 98 S.Ct. 497, 54 L.Ed.2d 447 (1977).

Even assuming, arguendo, that State Farm's point is properly preserved, it is difficult to see how State Farm has been harmed. This case is not like *Lemos v. Montez*, 680 S.W.2d 798 (Tex.1984), or *Acord v. General Motors*, 669 S.W.2d 111 (Tex.1984), cited by State Farm to support its position. In those cases, the trial court gave instructions, albeit correct statements of the law, which the Texas Supreme Court held to be comments by the court on the weight of the evidence and which could have unfairly influenced the jury in those cases. In this cause, we have the trial court submitting a completely neutral issue which asked the jury to find a disputed fact. The trial court did not instruct the jury as to the existence or nonexistence of the factual dispute in question. We hold, therefore, that any potential error by the trial court was harmless. Accordingly, we overrule State Farm's points of error nine through eleven.

Finally, State Farm contends in point of error six that the evidence was legally and factually insufficient to sustain the breach of contract damages. Since the district court rendered its final judgment on the DTPA and Insurance Code liability and damage findings, and treated the breach of contract findings as surplusage, we find it unnecessary to address this point.

## II.
### Appellees' Cross–Points
#### 1. *Mandatory Treble Damages*

Appellees brought this cause of action alleging several interrelated statutory and common-law causes of action. The primary statutes involved were the DTPA and article 21.21 of the Insurance Code. It is important to recognize the common history and interrelationship of these two statutes. Both were enacted in 1973 as part of a reform package of consumer legislation. The statutes overlap and have much in common, but they are not identical. The general scope of the statutes is different. The DTPA broadly declares unlawful any false, misleading, and deceptive acts or practices in "any trade or commerce." DTPA §§ 17.45(6), 17.46(a). The proscriptions of article 21.21 of the Insurance Code are directed at unfair or deceptive trade practices but solely "in the business of insurance." Tex.Ins.Code Ann. art. 21.21, §§ 1, 3 (1981 & Supp.1991).

Treble damages were mandatory under both statutes as they were originally enacted in 1973. 1973 Tex.Gen.Laws, ch. 143, sec. 1, § 17.50(a) at 326 (Tex.Bus. & Com.

Code Ann. § 17.50(a) (since amended)), and sec. 2(c), art. 21.21, § 16, at 338 (Tex.Ins. Code Ann. art. 21.21, § 16 (since amended)). The DTPA was amended in 1979 to require a finding of "knowing" misconduct as a prerequisite to treble damages. 1979 Tex. Gen.Laws, ch. 603, sec. 4, § 17.50(a) at 1329 (since codified at Tex.Bus. & Com. Code Ann. § 17.50(a)). Even with such a finding by the trier of fact an award of additional damages is *discretionary* with the fact finder. *Jim Walter Homes, Inc. v. Valencia,* 690 S.W.2d 239 (Tex.1985).

In contrast, treble damages under article 21.21 of the Insurance Code remained mandatory in all cases without any requirement of "knowing" misconduct until 1985. In that year, the legislature amended article 21.21, like the DTPA, to require a finding of "knowing" misconduct as a prerequisite for treble damages, but unlike the DTPA, once knowing misconduct is found under article 21.21, treble damages are *mandatory. See* 1985 Tex.Gen.Laws, ch. 22, sec. 3, art. 21.21, § 16 at 395–6 (since codified at Tex.Ins.Code Ann. art. 21.21, § 16(b)(1)).

■ In the instant case, the district court entered a final judgment for Appellees that awarded *discretionary damages* under the DTPA consistent with the jury's finding in that regard. Appellees contend that they were entitled to mandatory trebling of the actual damages rather than the lesser discretionary damages as found by the jury. Appellees argue that their cause of action for misrepresentation and unconscionable conduct pursuant to the DTPA § 17.50(a)(4) incorporated the mandatory treble damage provisions of article 21.21 of the Insurance Code and thus required the district court to enter a final judgment for mandatory treble damages. We agree.

■ The statutory interplay of the DTPA and article 21.21 of the Insurance Code is complicated, but the statutory steps inexorably lead to the conclusion that Appellees are entitled to mandatory treble damages. Appellees contend that the first step in the process is to determine which version of the DTPA controls the final judgment to be rendered in this case. The date of the deceptive act or practice deter-

mines which version of the DTPA applies. *Woods v. Littleton,* 554 S.W.2d 662, 666 (Tex.1977); *La Sara Grain Co.,* 673 S.W.2d at 565; *Robin Wood Bldg. & Dev. Co. v. Pettigrew,* 737 S.W.2d 110, 111 (Tex. App.1987, no writ). It is undisputed that Agent Goss made the misrepresentation of coverage in 1984. Therefore, we agree with Appellees that the 1984 version of the DTPA controls the disposition of this case.

Appellees argue that step two requires an examination of the relief to be rendered considering both statutes as they existed in 1984. At that time, article 21.21 of the Texas Insurance Code required mandatory treble damages for a violation irrespective of whether the conduct was a "knowing" violation. 1973 Tex.Gen.Laws, ch. 143, sec. 2(c), art. 21.21, § 16, at, 338 (Tex.Ins.Code Ann. art. 21.21, § 16 (since amended)). Section 17.50(a)(4) of the DTPA incorporated into the Act the provisions of article 21.21 of the Insurance Code. Thus, Appellees ultimately concluded that on the date their cause of action arose (the 1984 misrepresentation) the two statutes required an award of treble damages. We agree.

The only argument State Farm advances to refute this statutory analysis is the assertion that section 17.50(a)(4) of the 1984 version of the DTPA specifically did not incorporate the treble damages provisions of article 21.21 of the Insurance Code. We disagree. The position State Farm asserts has been specifically rejected by the Texas Supreme Court in *Vail v. Texas Farm Bureau Mutual Insurance Co.,* 754 S.W.2d 129 (Tex.1988). In *Vail,* the plaintiffs sued when their home was destroyed by fire and Farm Bureau refused to pay their claim. The Vails sued for the full amount of the policy and for other damages under the DTPA and the Insurance Code, alleging a bad-faith failure to pay the claim. Specifically, the plaintiffs alleged that Farm Bureau had engaged in unfair claims settlement practices prohibited by article 21.21–2 of the Insurance Code. Farm Bureau contended that no private cause of action was provided for individuals injured by unfair claims settlement practices. Plaintiffs in that case responded that they were not asserting a cause of action under the Insurance Code but rather the Code's incorporation into the DTPA § 17.50(a)(4). The

DTPA did provide an individual with a private cause of action. The Texas Supreme Court held that "the language of section 17.50(a)(4) of the DTPA, however, by its terms, incorporates article 21.21 of the Insurance Code *in its entirety.*" *Vail,* 754 S.W.2d at 132. (emphasis added). Thus, based upon the controlling authority of *Vail,* the statutory analysis to be applied in this cause is clear. Appellees' claim under section 17.50(a)(4) of the DTPA is governed by the 1984 version of that act which incorporates in its entirety *all* of article 21.21 of the Insurance Code, including mandatory treble damages. The trial court erred in awarding Appellees only discretionary additional damages as found by the jury. Appellees should have been awarded mandatory treble damages. *Mytel Int'l, Inc. v. Turbo Refrigerating Co.,* 689 S.W.2d 315, 319 (Tex.App.1985, no writ) (holding that it is reversible error not to award treble damages when they are mandatory under the statute). Appellees' first cross-point is sustained.

### 2. *Prejudgment Interest*

In cross-point two, Appellees contend that the trial court incorrectly calculated the amount of prejudgment interest in the final judgment. Apparently, the district court erroneously failed to calculate prejudgment interest for the thirteen days that elapsed between the judgment hearing and actual entry of the final judgment. Since we find it necessary to reform the district court's final judgment, we sustain Appellees' cross-point of error two.

### 3. *Breach of Contract Theory*

Since the judgment of the district court is affirmed as modified, we need not address Appellees' cross-points three, four, and five relating to the breach of contract theory; in as much as this theory does not form the basis of the final judgment rendered.

### III.

### Reformation of the Final Judgment

We modify and, as modified, affirm the final judgment of the district court. The judgment is modified to award Lee Gros and Sharon Gros additional prejudgment interest in the amount of $1,139.13; and three times the amount of their actual damages, $319,833.00, and prejudgment interest, $73,254.90, for a total treble damage award of $1,179,263.70. The accrued judgment amount for the award of attorney's fees includes amounts awarded on appeal. The judgment as modified is affirmed.