Jason **FEUERBERG**, Appellant,

v.

**Jeffery Martin BUSH, Appellee.**

**No. 05–04–00729–CV.**

Court of Appeals of Texas, Dallas.

Aug. 19, 2005.

Rehearing Overruled Nov. 18, 2005.

Edward L. Rice, Capelle & Burdette, L.L.P., Dallas, for Appellant.

Michael Philip Aigen, Lackey Hershman, L.L.P., Dallas, for Appellee.

Before Justices WRIGHT, MOSELEY, and LANG.

## OPINION

Opinion by Justice WRIGHT.

This is a breach of contract action filed by Bush with counterclaims asserted by Feuerberg. Jason Feuerberg appeals from a judgment awarding Jeffery Bush damages and attorney's fees. In two points of error, Feuerberg contends: (1) the evidence is legally and factually insufficient to support the judgment; and (2) the trial court erred in failing to award him damages and attorney's fees for Bush's breach of the contract. We sustain Feuerberg's first point of error, reverse the trial court's judgment, and render judgment that Bush take nothing on his breach of contract claim.

## Background

Bush owned an auto parts store named Horsepower Store, Inc. He decided to sell the store and began looking for a buyer. He met Feuerberg who, at the time, was still in college. Feuerberg was interested in Horsepower and his parents gave him $30,000 to invest. On January 2, 2002, Bush and Feuerberg signed an agreement whereby Feuerberg paid Bush $30,000 and, in return, Bush was to transfer 1,500 shares to him. Thereafter, Feuerberg was to make monthly payments for additional shares. Feuerberg also became the Store's manager. Bush became dissatisfied with Feuerberg's management of the Store. In June of 2002, Feuerberg quit his job.

On September 10, 2002, Feuerberg made a written demand for the return of the money paid for the purchase of the stock. Bush filed this lawsuit against Feuerberg on January 28, 2003 seeking damages for Feuerberg's failure to purchase the additional shares.[1] Feuerberg filed a counterclaim alleging Bush breached the contract by failing to transfer the shares to him.

On December 31, 2003, Bush prepared a stock transfer ledger listing the transfer of shares to Feuerberg post-dated to the dates the transfers should have been made. At the time Bush created this written documentation of the transfer of

---

1. Horsepower was also a plaintiff in the lawsuit seeking recovery for property allegedly converted by Feuerberg. The jury awarded Horsepower $546.61. Feuerberg does not appeal that award and Horsepower is not a party to this appeal.

shares, the corporation had ceased doing business and was worthless. In February 2003, The Horsepower officially ceased doing business.

The case was tried before a jury. The jury found that both Bush and Feuerberg breached the agreement. The jury awarded $70,500 to Bush and zero damages to Feuerberg. The trial court rendered judgment according to the jury's verdict and this appeal timely followed.

## Standard of Review

Feuerberg raises two points of error concerning whether the evidence supports the jury's answers to questions in the jury charge.

■ An appellant attacking the legal sufficiency of an adverse jury finding on which he had the burden of proof must demonstrate that the evidence establishes, as a matter of law, all vital facts in support of the finding. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex.2001) (per curiam). In reviewing such a claim, we first examine the record for evidence supporting the jury's finding, while ignoring all evidence to the contrary. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989). If there is no evidence to support the fact finder's answer, only then will we review the entire record to assess whether the contrary proposition was established as a matter of law. *See Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 940 (Tex.1991).

■ If an appellant challenges the factual sufficiency of a jury finding regarding an issue upon which the appellant had the burden of proof, he must demonstrate that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem.*, 46 S.W.3d at 241. In reviewing this challenge, we consider all of the evidence in determining whether the find-ing is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *See In re King's Estate*, 150 Tex. 662, 665, 244 S.W.2d 660, 661 (1951). We may reverse and remand for a new trial if we conclude the jury's failure to find is against the great weight and preponderance of the evidence. *See Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646, 651 (Tex. 1988).

## Breach of the Agreement

In his first point of error, Feuerberg contends the evidence is legally and factually insufficient to support the jury findings that he breached the Agreement and that his breach was not excused. Specifically, he contends: (1) under the unambiguous terms of the Agreement, he was not in breach, and (2) the evidence does not support the jury finding that Feuerberg's breach was not excused by Bush's failure to transfer the initial 1,500 shares paid for by Feuerberg.

The Agreement provides, in pertinent part, as follows:

1. *Sale and Transfer of the Shares.* Seller shall sell and transfer the Shares to Buyer, and Buyer shall tender to Seller the purchase price per share for the Shares, as follows:

(a) Upon the signing of this Agreement, Seller shall sell and transfer One Thousand Five Hundred (1,500) shares of the Shares to Buyer, and Buyer shall pay Seller Thirty Thousand Dollars ($30,000) in cash for the One Thousand Five Hundred (1,500) shares:

(b) Seller shall then sell Three Thousand Six Hundred (3,600) shares of the remaining Shares to Buyer and Buyer shall pay Seller Twenty Dollars ($20.00) per share for each of the Three Thousand Six Hundred (3,600) shares for a total of Seventy–Two Thousand Dollars

($72,000); provided that Buyer pay Seller no less than Five Hundred Dollars ($500) on the first of each and every month following the date this Agreement is signed until all of the Three Thousand Six Hundred (3,600) shares are purchased. Seller shall convey and transfer to Buyer on the thirty-first day of December of each year following the date this Agreement is signed the number of such shares for which Seller has been paid-in-full. However, in the event that a company distribution or dividend (See (d) below) is paid to shareholders, Seller shall transfer and convey to Buyer all shares that Buyer has paid for in-full prior to such distribution or dividend. . . .

■ The jury found Feuerberg failed to comply with the requirement in section 1(b) to purchase an additional 3,600 shares.[2] Feuerberg contends this finding was error because, under the unambiguous terms of the contract, he was not in breach. Feuerberg, however, did not object to the submission of this question asking the jury to interpret this provision of the Agreement.

Any complaint as to a jury question is waived unless a specific objection is submitted to the trial court. TEX.R. CIV. P. 274. Failure to object to a jury question before the charge is submitted to the jury waives the issue on appeal. TEX.R.APP. P. 33.1; *State Farm Fire & Cas. Co. v. Gros,* 818 S.W.2d 908, 916 (Tex.App.-Austin 1991, no writ). Because Feuerberg did not object to the question asking whether he was in breach of the Agreement, he has not preserved this complaint for review.

We turn now to whether the evidence supports the jury finding that Feuerberg's breach was not excused by Bush's failure to comply with a material obligation. The jury found that Bush failed to comply with his obligation to transfer the initial 1,500 shares to Feuerberg[3]. However, the jury

2. Question No. 1

Did Feuerberg fail to comply with the Sale and Purchase Agreement?

It is your duty to interpret the following language of the agreement:

"Seller shall then sell Three Thousand Six Hundred (3,600) shares of the remaining Shares to Buyer and Buyer shall pay Seller Twenty Dollars ($20.00) per share for each of the Three Thousand Six Hundred (3,600) shares for a total of Seventy–Two Thousand Dollars ($72,000); provided that Buyer pay Seller no less than Five Hundred Dollars ($500) on the first of each and every month following the date this Agreement is signed until all of the Three Thousand Six Hundred (3,600) shares are purchased."

You must decide its meaning by determining the intent of the parties at the time of the agreement. Consider all the facts and circumstances surrounding the making of the agreement, the terms of the entire agreement, the interpretation placed on the agreement by the parties, and the conduct of the parties.

Answer "Yes" or "No."

Answer: Yes

3. Question No. 4

Did Bush fail to comply with the Sale and Purchase Agreement?

It is your duty to interpret the following language of the agreementL

"Upon the signing of this Agreement, Seller shall sell and transfer One Thousand Five Hundred (1,500) shares of the Shares to Buyer."

and

"Seller shall convey and transfer to Buyer on the thirty-first day of December of each year following the date of [sic] this Agreement is signed the number of shares for which Seller has been paid-in-full."

You must decide its meaning by determining the intent of the parties at the time of the agreement. Consider all the facts and circumstances surrounding the making of the agreement, the terms of the entire agreement, the interpretation placed on the agreement by the parties, and the conduct of the parties.

Answer "Yes" or "No."

Answer: Yes

found that the transfer of shares was not a material obligation that would, in turn, excuse Feuerberg's failure to pay for the additional 3,600 shares.[4]

■ Feuerberg contends the evidence is legally and factually insufficient to support the jury's finding that Bush did not fail to comply with a material obligation thereby excusing his breach. We agree.

The jury charge did not define the term "material." Webster's defines "material" as being of real importance or having great consequences. *See* WEBSTER'S THIRD NEW INT'L DICTIONARY 1392 (1981). The Agreement provided that in return for Feuerberg's payment of $30,000, Bush was to transfer 1,500 shares of Horsepower's stock. The consideration given by each party was substantial. Feuerberg suffered a great consequence by Bush's failure to transfer the initial 1,500 shares Feuerberg paid for—Feuerberg did not become a shareholder. The transfer of shares was, as a matter of law, a material obligation under the agreement. But for the promise to transfer the shares, Feuerberg would not have paid Bush $30,000. The Agreement itself shows that Bush's obligation to transfer the shares was a material obligation.

■ Bush argues the Agreement and corporate resolution approving the Agreement effectively transferred the shares. The Agreement, however, states that Bush *shall transfer* the shares. The corporate resolution merely approves the Agreement without addressing the transfer of shares. Thus, contrary to Bush's contention, the corporate resolution approving the Agreement does not itself suffice as a transfer of stock.

Horsepower's bylaws do address the transfer of shares. Pursuant to corporation's bylaws, a transfer of shares does not occur until a written designation appears on the corporation's books. Section 6.02 of the bylaws provides: "Transfers of shares or other securities shall be made only on the books of the Corporation by the registered holder thereof, or by such holder's attorney thereunto authorized by power of attorney and filed with the Secretary of the Corporation or the transfer agent." Furthermore, with regard to the corporation's books, the bylaws provide as follows:

**Section 10.06. *Books and Records.*** The Corporation shall keep correct and complete books and records of account and shall keep minutes of the proceedings of its shareholders, Board of Directors and each committee of its Board of Directors, and shall keep at its registered office or principal place of business, or at the office of its transfer agent or registrar, a record of the original issuance of shares issued by the Corporation and a record of each transfer of those shares that has been presented to the Corporation for registration of transfer. Such original issuance and transfer records shall contain the names and addresses of all past and current shareholders of the Corporation and the number and class or series of shares held by each. Any books, records, minutes and share transfer records may be in written form or in other form capable of being converted into written form within a reasonable time.

---

4. Question No. 3
    Was Feuerberg's failure to comply excused?
        Failure to comply is excused if, before Feuerberg failed to comply, Bush failed to comply with a material obligation of the same agreement.

\* \* \*
Answer "Yes" or "No."
Answer: No

The corporation maintained a stock transfer ledger. The transfer of shares to Feuerberg was not listed on the stock ledger until December 31, 2003. According to the bylaws, the shares were not transferred until that date.

■ Bush argues that he did not fail to comply with a material obligation because Feuerberg did, in fact, become a shareholder. Bush relies on the testimony that Feuerberg initially thought he was a shareholder and acted as a shareholder. Regardless of what Feuerberg may have thought, Bush was the sole shareholder of Horsepower when the parties signed the Agreement in January of 2002 and signing the Agreement did not change that fact. It was only after litigation had ensued and Horsepower's value had become worthless that Bush transferred the shares.

We conclude the evidence is legally insufficient to support the jury's finding that Feuerberg's failure to comply with the Agreement was not excused. After reviewing the entire record, we conclude the evidence conclusively established that Bush did fail to comply with a material obligation. The jury found Bush suffered damages in the amount of $70,500 as a result of Feuerberg's breach. Because Feuerberg's breach is excused, Bush is not entitled to any damages. We sustain Feuerberg's first point of error.

### Damages

■ As noted earlier, the jury found that Bush breached the Agreement by failing to transfer the shares. However, the jury found that Feuerberg did not incur any damages as a result of Bush's breach. In his second point of error, Feuerberg contends the evidence is legally and factually insufficient to support the award of zero damages. We disagree.

Feuerberg testified that Bush's failure to transfer the shares prevented him from selling those shares. He said that he *thought* about selling his stock when he left the store. At the time that he left, he thought the stock still had some value. Bush testified, however, that at the time Feuerberg left, the stock was worthless and that Horsepower's liabilities exceeded its assets.

It is undisputed that when Feuerberg sent a written demand to Bush for the return of his money, the stock had no value. Thus, when Feuerberg first made an attempt to sell the stock he thought he owned, its value was worthless. We conclude the evidence is legally and factually sufficient to support the jury finding of zero damages for Feuerberg. We overrule Feuerberg's second point of error.

We reverse the trial court's $70,500 damages award and $3,525 award of pre-judgment interest in favor of Bush. We render judgment that Bush take nothing on his breach of contract claim. In light of this Court's holdings, we remand the award of attorney's fees to the trial court.[5]

---

5. The trial court awarded Bush $45,088.75 in attorney's fees. Feuerberg does not raise a separate point of error challenging the award of attorney's fees. However, because we are rendering judgment that Bush is not entitled to any damages, we remand the issue of attorney's fees to the trial court.