Affirmed and Memorandum Opinion filed September 13, 2011.

 

In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-10-00703-CV



 

Barbara Jane Jones,
Individually and as Next Friend of Brittany Jones, a Minor and Heir to
CandelariO Santos III, DECEASED, and Teresa Cruz, as Representative of the
Estate of and as Heir to Candelario Santos III, Deceased, Appellants

V.

Pennzoil-Quaker State Company
d/b/a Sopus Products, Appellee

 



On Appeal from the 151st
District Court

Harris County, Texas

Trial Court Cause No. 2007-36639



 

MEMORANDUM  OPINION



Barbara Jane Jones, individually and as next friend
of Brittany Jones, a minor and heir to Candelario Santos III, deceased, and
Teresa Cruz, as representative of the estate of and as heir to Candelario
Santos III, deceased, sued Pennzoil-Quaker State Company d/b/a Sopus Products. 
The suit arises from a tire blowout and accident that Jones and Cruz attribute
to the use of Pennzoil’s product Fix-A-Flat.  The trial court granted a
no-evidence summary judgment on all claims against Pennzoil.  We affirm.

BACKGROUND

Barbara Jones was driving a car containing her
fiancé, Candelario Santos, and her daughter, Brittany Jones, on January 29,
2007 when the right rear tire experienced a blowout.  Barbara lost control of
the vehicle, which veered into the median and rolled over.  Santos was killed
and Barbara suffered serious injuries.  

Barbara had been visiting her parents approximately
two to three weeks before the accident when she noticed that her right rear
tire was not fully inflated.  Jones’s father testified that he checked the tire
pressure, determined that it was low, and used Fix-A-Flat on the tire. 
Fix-A-Flat is a sealant that can be introduced through a tire’s air valve to
provide a liquid seal and increased air pressure in certain punctured tires.  

Neither Jones nor her father took the tire to an
independent tire professional for further evaluation.  The parties do not
dispute that Barbara continued to drive on the tire for approximately three
weeks or 300 miles until the blowout and accident occurred.  An officer at the
scene of the accident reported that all four tires had “very low tread,” and
that the tread on each tire measured between 2/32 of an inch and 6/32 of an
inch.

Jones and Cruz sued Pennzoil, the manufacturer of
Fix-A-Flat, in connection with the accident.  They allege that the blowout was
caused by Fix-A-Flat, which has a “propensity to cause tread/belt separation
under normal and foreseeable operation.”  They contend that Pennzoil
defectively marketed Fix-A-Flat as a “lasting durable repair” when, in fact, it
should be used only as a short-term, emergency repair.  They additionally claim
that Pennzoil is liable for negligence, breach of express and implied warranties,
and Texas Deceptive Trade Practices Act violations.  They also sued the tire manufacturer,
which is not a party to this appeal.

Jones and Cruz designated Charles Gold as a “tire
failure analyst” who “may be called to testify to offer opinions relating to
the cause of the failure of the subject tire . . . [and] other similar tire
failure incidents involving substantially similar tires.”  They submitted
Gold’s two-page expert report, in which he opines that continued operation
after the use of Fix-A-Flat, in part, caused the blowout.  Gold states: 

The
[Fix-A-Flat] sealant used in this tire is meant to be used as a temporary
repair to allow the vehicle to be moved safely to a permanent repair facility. 
The instructions to the user should clearly inform the user that it is not a
long term solution to the flat tire.  Moreover, the sealant is an inadequate
repair as advertised.  A tire repair should have included a proper patch
preceded by buffing of the innerliner, at a minimum.

Pennzoil filed a motion to exclude
Gold’s testimony.  Pennzoil contended that Gold’s causation opinion is not
supported by “any empirical evidence, methodology, or studies to explain the
validity of his extrapolation that Fix-A-Flat caused the tread separation at
issue simply from the allegation that a tire sealant/inflator was used and the
tire later failed.”  Jones and Cruz filed a response to the motion and attached
an additional 16-page affidavit, in which Gold details his qualifications,
opinions, and methodology.   

Gold asserts in his affidavit that oxygen exposure
causes rubber components in the internal structures of a tire to degrade,
compromising the rubber’s adhesive and fatigue-resistant qualities. 
Innerliners protect the internal structures found between the innerliner and
the outside tread of a tire from exposure to the oxygen contained in the
inflationary gases.  Gold states that a nail punctured the accident tire,
causing a breach in the outside tread as well as the innerliner.  Gold
testified at his deposition that (1) although Fix-A-Flat may seal the outside
surface of a puncture and prevent air from leaking completely from the tire, an
unrepaired breach in the innerliner allows oxygen to enter the internal
structures from the inflationary gases; and (2) this circumstance causes a
condition called “intra-carcass pressurization” (ICP).  According to his affidavit,
ICP causes an “accelerated degradation of the [tire’s] internal components” and
“substantially increases” a tire’s susceptibility to failure by tread separation.

After a hearing on Pennzoil’s motion, the trial court
concluded that Gold could testify about the following points: (1) that the
innerliner in the accident tire was not sealed; (2) this unrepaired breach in
the innerliner caused ICP in the accident tire; and (3) ICP can cause tire
failure in general.  The court ruled that Gold could not testify that ICP
caused the blowout at issue in this case.

Pennzoil subsequently filed a no-evidence summary
judgment motion on each claim raised by Jones and Cruz.  Pennzoil asserted that
Jones and Cruz could proffer no evidence to show that Fix-A-Flat caused the blowout
in this case.  The trial court granted the motion as to all claims asserted against
Pennzoil on April 1, 2010.  

Jones and Cruz filed an emergency motion to
reconsider, which the trial court denied, stating: 

The Court
finds that the evidence on which Plaintiffs rely in response to Pennzoil’s
no-evidence summary judgment motion does not create a fact issue . . . .  No
matter how many times Plaintiffs repeat that Fix-a-Flat was never intended to
be a permanent repair as suggested . . . by its label, Plaintiffs still need to
adduce sufficient summary judgment evidence that the tread separation/failure
was actually caused by the alleged intra-carcass pressurization leading
to premature degradation of the . . . rubber [in the internal structures of the
tire] in this case.  They have not.  They have only adduced summary
judgment evidence that the general condition of intra-carcass pressurization
was likely present in this case.  

(emphasis in original).  The
summary judgment became final when the trial court signed an agreed final
judgment disposing of all of Jones’s and Cruz’s remaining claims against the
tire manufacturer on July 14, 2010.    

ANALYSIS

Jones and Cruz argue on appeal that the trial court
erred in (1) granting Pennzoil’s motion to exclude Gold’s expert opinion on causation;
and (2) granting Pennzoil’s no-evidence summary judgment.[1] 


I.         Motion
to Exclude

Jones and Cruz first argue that the trial court
erroneously granted Pennzoil’s motion to exclude Gold’s opinion that Fix-A-Flat
caused the accident tire to fail.[2]


 “‘If scientific, technical, or other specialized
knowledge will assist the trier of fact to understand the evidence or to
determine a fact in issue, a witness qualified as an expert by knowledge,
skill, experience, training, or education may testify thereto in the form of an
opinion or otherwise.’”  Cooper Tire & Rubber Co. v. Mendez, 204
S.W.3d 797, 800 (Tex. 2006) (quoting Tex. R. Evid. 702); see also Daubert v.
Merrell Dow Pharm., Inc., 509 U.S. 579, 588–89 (1993).  Expert testimony is
admissible when (1) the expert is qualified; and (2) the testimony is relevant
and based on a reliable foundation.  Mendez, 204 S.W.3d at 800.  If the
expert’s scientific evidence is not reliable, it is not evidence.  Id. 
Courts must determine reliability from all of the evidence.  Merrell Dow
Pharm., Inc. v. Havner, 953 S.W.2d 706, 720 (Tex. 1997); Taber v. Roush,
316 S.W.3d 139, 147–48 (Tex. App.—Houston [14th Dist.] 2010 no pet.).

We review the trial court’s determination under these
standards for abuse of discretion.  Mendez, 204 S.W.3d at 800.  A trial
court abuses its discretion when it acts without reference to any guiding rules
or principles.  Id.  Admission of expert testimony that does not meet
the reliability requirement constitutes an abuse of discretion.  Id. 
Expert testimony must be based on a reliable foundation of scientific or
professional technique or principle.  Wiggs v. All Saints Health Sys.,
124 S.W.3d 407, 410 (Tex. App.—Fort Worth 2003, pet. denied) (citing E.I. du
Pont de Nemours & Co. v. Robinson, 923 S.W.2d 549, 557 (Tex. 1995)). 
When the expert’s underlying scientific technique or principle is unreliable, the
expert’s opinion is no more than subjective belief or unsupported speculation
and is inadmissible.  Id.  Causation opinions predicated on possibility,
speculation, and surmise are no evidence.  Havner, 953 S.W.2d at 711–12.

In Robinson, the Texas Supreme Court set forth
six non-exclusive factors to assist courts in determining whether expert
testimony is admissible:

1.      The
extent to which the theory has been or can be tested;

2.      The
extent to which the technique relies upon the subjective interpretation of the
expert;

3.      Whether
the theory has been subjected to peer review and/or publication;

4.      The
technique’s potential rate of error;

5.      Whether
the underlying theory or technique has been generally accepted as valid by the
relevant scientific community; and 

6.     
The non-judicial uses that have been made of the theory or technique.

Robinson, 923 S.W.2d
at 557.  The Texas Supreme Court has explained that these factors cannot always
be used in assessing an expert’s reliability but concluded that “‘there must be
some basis for the opinion offered to show its reliability.’”  Mendez,
204 S.W.3d at 801 (quoting Gammill v. Jack Williams Chevrolet, Inc., 972
S.W.2d 713, 726 (Tex. 1998)).  Under such circumstances, expert testimony is
unreliable if there is simply too great an analytical gap between the data and
the opinion proffered.  Id. at 800.  A reviewing court is not required
to ignore gaps in an expert’s analysis or assertions that are simply incorrect,
and a trial court is not required to admit evidence connected to existing data
only by the expert’s ipse dixit.  Id. at 800–01.  Bald assurances
of validity do not suffice.  Havner, 953 S.W.2d at 712.  The underlying
data should be independently evaluated in determining if the opinion itself is
reliable.  Id. at 713.

Jones’s and Cruz’s theory is that Fix-A-Flat sealed
the outside surface of a puncture on the accident tire but failed to seal a breach
in the innerliner.  The accident tire then was placed into service on the
accident vehicle for approximately 300 miles or three weeks.  When asked in his
deposition whether he could cite to any scientific evidence to support his
opinion that “oxygen molecules would have migrated from the nail hole to the
point of tread separation sufficient to cause a tire failure within 300 miles,”
Gold answered, “I don’t know.  I’m sure there’s some work out there on — on
migration. . . .  I can’t think of any right now.”    

Gold cites one publication in his affidavit in
support of his conclusion that ICP caused the accident tire to fail within
three weeks or 300 miles of the application of Fix-A-Flat.  This publication is
an article by John Baldwin that, according to Gold, includes a study concerning
“the use of nitrogen, as opposed to oxygen, as a tire inflationary gas.”[3] 
According to Gold, Baldwin inflated certain tires with more that 95 percent
nitrogen, and others with a combination of nitrogen and oxygen in a ratio of
80/20 and 50/50.  Baldwin then baked the tires in an oven at 140 degrees Fahrenheit
for three to twelve weeks.  Baldwin noted that “the tires inflated with the
oxygenated media change dramatically, even three weeks in the oven” as compared
to the nitrogen-filled tires, which do not begin to show visible “oxidative
degradation” until after twelve weeks.  Baldwin concluded that “nitrogen
molecules cause[] less rubber degradation due to the decreased contact the
rubber had with oxygen,” and that “the rate of degradation is significantly
lower” when the tire is filled with more than 95 percent nitrogen compared to
when the tire is filled with 20 or 50 percent oxygen.

Gold relies on Baldwin’s study to opine that “oxygen
inflated tires degrade at a much higher rate,”[4]
and that the use of Fix-A-Flat “will cause ICP over time which will result in
premature oxygenated rubber degradation and ultimate tire failure.”  Based on these
statements and his visual and tactile examination of the accident tire, Gold
concludes that Fix-A-Flat “as used in the accident tire was a cause of the
subject tire failure.” 

Gold does not explain how the conditions of Baldwin’s
study — or the unspecified rates and degrees of degradation discussed therein —
compare to the circumstances surrounding the accident tire’s use and failure. 
Baldwin’s study alone is insufficient to bridge the analytical gap between (1)
data regarding ICP and degradation from oxygen exposure in general; and (2) an
opinion that ICP and degradation resulting from the unrepaired breach in the
innerliner of the accident tire was rapid and extensive enough to cause tire
failure within three weeks or 300 miles of applying Fix-A-Flat.  See
Goodyear Tire & Rubber Co. v. Rios, 143 S.W.3d 107, 114 (Tex. App.—San
Antonio 2004, pet. denied) (“The issue is not the reasonableness in general
of a tire expert’s use of a visual and tactile inspection to determine what
caused the tire’s tread to separate from its steel-belted carcass.  Instead, it
is the reasonableness of using such an approach, along with the expert’s
particular method of analyzing the data thereby obtained, to draw a conclusion
regarding the particular matter to which the expert testimony was directly
relevant.”) (internal quotations omitted) (emphasis in original) (citing Kumho
Tire Co. v. Carmichael, 526 U.S. 137, 153–54 (1999)).       

Because of this analytical gap, Gold’s causation
opinion rests on his subjective interpretation and is inadmissible under Robinson. 
See Robinson, 923 S.W.2d at 557; see also Mendez, 204 S.W.3d at
802 (“[W]e note that Grogan conducted nothing in the nature of a quantitative
analysis of wax contamination, such as calculating the amount of wax improperly
deposited on the skim stock or the amount necessary to cause a tire
malfunction.  He offered no testimony that the scientific community has
determined the amount of wax needed to cause a tire failure.  He admitted in
his deposition that he had not ‘done any type of mathematical calculations with
respect to anything in this case.’”) (emphasis in original).  Accordingly, we conclude
that Gold’s causation opinion is predicated on possibility, surmise, and
speculation, and that the trial court acted within its discretion in striking
the challenged portions of Gold’s testimony.  See Mendez, 204 S.W.3d at
800, 802–05 (expert testimony regarding cause of tire failure was unreliable,
in part, because record was devoid of any scientific testing or peer-reviewed
studies confirming expert’s hypothesis that wax contamination causes radial
tire belts to separate); Volkswagen of Am., Inc. v. Ramirez, 159 S.W.3d
897, 905–06 (Tex. 2004) (expert testimony regarding cause of automobile
accident was unreliable, in part, because the expert did not conduct tests or
cite studies to support theory that wheel separation was the cause of the
accident and not the result of the accident); Rios, 143 S.W.3d at 115
(expert testimony regarding cause of tire failure was unreliable because expert
did not refer to any article or publication that specifically supported his use
of a visual and tactile inspection to conclude that a manufacturing defect was present,
rather than a defect “caused by use and abuse of tire over time”).  We overrule
Jones’s and Cruz’s issue regarding the trial court’s ruling on Pennzoil’s
motion to exclude.

II.        No-Evidence
Summary Judgment 

Jones and Cruz next argue that the trial court
erroneously granted Pennzoil’s no-evidence summary judgment motion.  

An appellate court applies de novo review to a
grant of summary judgment, using the same standard that the trial court used in
the first instance.  Duerr v. Brown, 262 S.W.3d 63, 68 (Tex.
App.—Houston [14th Dist.] 2008, no pet.) (citing Valence Operating Co. v.
Dorsett, 164 S.W.3d 656, 661 (Tex. 2005)).  A no-evidence motion for
summary judgment under Rule 166a(i) must be granted if (1) the moving party
asserts that there is no evidence of one or more specified elements of a claim
or defense on which the adverse party would have the burden of proof at trial;
and (2) the respondent produces no summary judgment evidence raising a genuine
issue of material fact on those elements.  Duerr, 262 S.W.3d at 69
(citing Tex. R. Civ. P. 166a(i)).  In reviewing a no-evidence motion for
summary judgment, we view all of the summary judgment evidence in the light
most favorable to the non-movant, “crediting evidence favorable to that party
if reasonable jurors could, and disregarding contrary evidence unless
reasonable jurors could not.”  Id. (quoting Mack Trucks, Inc. v.
Tamez, 206 S.W.3d 572, 582 (Tex. 2006)).  The non-moving party is not
obligated to marshal its proof, but it is required to present evidence that
raises a genuine fact issue on the challenged element.  Id. (citing Sw.
Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002)).  

Jones and Cruz concede on appeal that “[c]entral to
every claim [plaintiffs] asserted is the allegation that using [Fix-A-Flat] in
the manner marketed by Pennzoil caused the tire in this case to fail.”  To
prevail on any of their claims, Jones and Cruz had to proffer evidence
sufficient to raise a fact issue as to whether Fix-A-Flat caused the tire
failure and plaintiffs’ injuries.  See Metro Allied Ins. Agency, Inc. v. Lin,
304 S.W.3d 830, 835 (Tex. 2009) (analyzing claims for Deceptive Trade Practices
Act violations); Tamez, 206 S.W.3d at 582 (analyzing claims for
negligence, breach of warranty, and design, manufacturing, and marketing
defects).  Producing or proximate cause is an element of all of Jones’s and
Cruz’s claims.  See Lin, 304 S.W.3d at 835; Tamez, 206 S.W.3d at
582.  Causation-in-fact is common to both proximate and producing cause,
including the requirement that the defendant’s conduct or product be a “substantial
factor” in bringing about the injuries in question.  Lin, 304 S.W.3d at
835; Tamez, 206 S.W.3d at 582.  

Jones and Cruz argue on appeal that summary judgment
was improper because (1) the trial court erroneously struck expert James
Gardner’s deposition testimony from the summary judgment record; and (2) Gardner’s
testimony “support[s]” their assertion that the use of Fix-A-Flat caused the accident
tire to fail.[5]

The trial court initially sustained Pennzoil’s
objections to Gardner’s testimony on grounds that Jones and Cruz failed to designate
Gardner as an expert.  However, the trial court states as follows in its order
denying their emergency motion to reconsider its summary judgment: 

[T]he Court
will assume, for the purposes of this Order, that Plaintiffs are able to rely
on the testimony of James Gardner even though he was only designated as an
expert [by the tire manufacturer] and not by Plaintiffs.  [H]aving re-read all
of the cited deposition testimony of Mr. Gardner, the most that may be said of
that testimony is that it states that the use of Fix-a-Flat . . . may create
the condition of intra-carcass pressurization, which is a hazardous condition
which will eventually lead to failure.  Mr. Gardner . . . does not ever state
(and Plaintiffs do not cite to such a statement by Mr. Gardner) (1) how much
time would ordinarily elapse between the use of Fix-a-Flat and tread separation
or failure due to intra-carcass pressurization, or (2) that that is what, in
fact, occurred in this case.  

(emphasis in original).  Even
assuming that Jones and Cruz can rely on the testimony of an expert designated only
by the tire manufacturer, we have reviewed the deposition testimony proffered
by Jones and Cruz in response to Pennzoil’s no-evidence summary judgment motion
and agree with the trial court that Gardner’s testimony does not include an
opinion that Fix-A-Flat caused the accident tire to fail in this case.  Gardner’s
testimony “support[s]” Jones’s and Cruz’s causation theory only with respect to
the effects of ICP generally, the function of innerliners, the existence of an
unrepaired breach in the innerliner of the accident tire, and the likely
presence of ICP in the accident tire.  Jones and Cruz cite to no evidence in
the summary judgment record that Fix-A-Flat caused the accident tire to fail in
this case.  Accordingly, the trial court properly granted Pennzoil’s
no-evidence summary judgment motion.  See Duerr, 262 S.W.3d at 69.  We
overrule Jones’s and Cruz’s issue regarding the trial court’s no-evidence
summary judgment.

CONCLUSION

Having overruled all of Jones’s and Cruz’s issues on
appeal, we affirm the trial court’s judgment.

  

  








                                                                                    

                                                                        /s/        William
J. Boyce

                                                                                    Justice

 

 

 

Panel consists of Chief Justice
Hedges and Justices Seymore and Boyce.

 









[1]
These arguments are contained in Jones’s and Cruz’s second and third issues on
appeal.  Jones and Cruz argue in their first issue that, as a preliminary
matter, the trial court’s ruling that they could not present evidence of
unpleaded claims “was of no consequence” to the no-evidence summary judgment
because they have not tried to do so.  The record reflects that the trial court
understood Jones’s and Cruz’s theory of causation to be encompassed by the
pleadings, and the trial court did not exclude any evidence because it related
to “unpleaded claims.”  We do not address Jones’s and Cruz’s fourth issue —
that the trial court improperly granted summary judgment on the bystander
claims asserted on behalf of Brittany on the grounds that she lacks standing —
because we uphold the trial court’s summary judgment on other grounds.  See
supra, Part II.





[2]
Jones and Cruz also argue as part of this issue that the trial court erred in
sustaining Pennzoil’s objection to the expert testimony of James Gardner on
grounds that Jones and Cruz failed to designate him as an expert.  We address
this argument in conjunction with our analysis of their issue regarding the
trial court’s summary judgment ruling.





[3]
The Baldwin study cited in Gold’s affidavit does not appear in the record on
appeal.





[4]
In response to a question asking how much oxygen is typically found in the
gases that inflate a tire, Gold responded, “I wish I could tell you.  I
forgot.  But it’s 30 percent or something, 28, something like that.”





[5]
We do not consider Gold’s properly excluded causation opinion.