**Reversed and Rendered and Opinion filed January 3, 2023.**



In The

# Fourteenth Court of Appeals

### NO. 14-21-00703-CV

### ADEL KHECHANA, Appellant

### V.

### MOHAMED EL-WAKIL, Appellee

### On Appeal from the County Civil Court at Law No. 1
### Harris County, Texas
### Trial Court Cause No. 1158850

## O P I N I O N

In this case arising from the delay in obtaining clear title for a car's purchaser, defendant Adel Khechana appeals the judgment rendered against him after a non-jury trial on plaintiff Mohamed el-Wakil's claims of breach of contract, common-law fraud, and violations of the Deceptive Trade Practices–Consumer Protection Act (DTPA). Although we cannot say that the case became moot when clear title was obtained six weeks before trial, we agree with Khechana that there is no evidence that he caused the delay in obtaining clear title or that el-Wakil was damaged by the

delay. We accordingly reverse the trial court's judgment and render judgment that el-Wakil take nothing by his claims.

## I. BACKGROUND[1]

Adel Khechana owns the car dealership Casba, LLC d/b/a pplcars.com. Around March 2019, Khechana or Casba sold Ali Cishahayo Ali a 2014 Nissan Rogue, which Ali used as a taxi. At the time of sale, the vehicle had been driven approximately 20,000 miles. The $1,500.00 down payment on the car was paid by Ali's business associate, plaintiff Mohamed el-Wakil.

On July 2, 2019, Ali, el-Wakil, and Khechana met to discuss Ali's failure to pay the balance due for the car's purchase. At the meeting, Ali entered into a lease agreement with el-Wakil, which was witnessed by Khechana. The lease provided that el-Wakil would pay Khechana "$6233 which is the remaining balance for the Nissan Rogue 2014," and that el-Wakil would lease the vehicle from Ali. El-Wakil paid Khechana the $6,233.00 mentioned in the lease at that time.

The sum mentioned in the lease apparently was not the outstanding balance, however, and on September 12, 2019, Ali was again in arrears, so Khechana or Casba sold the car outright to el-Wakil, using Ali's power of attorney to sign the title certificate on Ali's behalf. By this time, the car had been driven about 60,000 miles, and el-Wakil paid Khechana $3,500.00 to complete the purchase.

In connection with the sale, Khechana, on behalf of Casba, signed a written sales contract with el-Wakil, and the contract states that it cancels and supersedes any prior agreement, including oral agreements, relating to the vehicle's sale. The

---

[1] In summarizing the evidence, we rely solely on the appellate record. *See WorldPeace v. Comm'n for Lawyer Discipline*, 183 S.W.3d 451, 465 n.23 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) ("[W]e cannot consider documents attached as appendices to briefs and must consider a case based solely upon the record filed.").

contract also cautions that the vehicle is sold "as is," with no warranties, and in particular, no warranties of merchantability or fitness for a particular purpose. The figures in the "settlement" portion of the contract, however, have no discernible relation to the actual transaction. The vehicle's price as stated in the contract was $6,231.90, to which were added various fees, including charges for the car's title, license, and registration. After these and other fees were added in, the total due was listed as $6,675.00, which was reduced to zero after a $4,000 trade-in allowance and a cash payment of $2,675.00. But in fact, there was no trade-in, and el-Wakil actually paid Khechana $3,500.00 at that time, bringing the total he had paid Khechana or Casba in connection with this vehicle to $11,233.00. According to el-Wakil, the price paid also was to include some unspecified repairs.

After buying the car, el-Wakil discovered that he could not use it as a taxi because the vehicle's taxi registration was in Ali's name, so el-Wakil bought a different car to operate as a taxi and left the Nissan at Khechana's dealership for Khechana to sell. When the car had not been sold by January 2020, el-Wakil retrieved the car from the dealership and Khechana gave el-Wakil the car's plates and registration.

In February 2020, however, the Texas Department of Motor Vehicles rejected el-Wakil's application for the car's title on the ground that Ali disputed the transfer "as possibly involving fraud." In response, el-Wakil sued Khechana and Casba in early September 2020 for violations of the DTPA, breach of contract, and fraud. The facts pleaded consisted solely of the following paragraph:

> On or about September 12, 2019, Plaintiff entered into a contract with Defendants, for the purchase of a 2014 Nissan Rogue. On or about March 15, 2019, Plaintiff made a down payment for the vehicle in the amount of $1,500.00. On July 2, 2019, Plaintiff paid an additional $6,233.00 to Defendants toward the purchase price. On September 12, 2019, Plaintiff paid to Defendants the remaining balance of $3,500.00.

3

> To date, the title to the vehicle has not been transferred into Plaintiff's name.

Although entitled to do so, el-Wakil apparently did not request a hearing on the Department of Motor Vehicles' refusal to issue him the car's title, so Khechana did. *See* TEX. TRANSP. CODE § 501.052. The title dispute was resolved in el-Wakil's favor, and the Department issued him title to the Nissan on January 30, 2021.

Six weeks later, the case was tried. Khechana represented himself, but inasmuch as he was unable to represent Casba, el-Wakil moved for a default judgment as to that defendant. El-Wakil testified that he wanted his $11,233.00 returned and was prepared to surrender the car. He agreed that the delay in obtaining clear title was "because of that allegation of fraud," and he offered no evidence that Khechana was responsible for the delay or that he, el-Wakil, was damaged by it.

The trial court rendered judgment that incorporated a default judgment against Casba, and as to both Casba and Khechana, the trial court rendered judgment in el-Wakil's favor on each of el-Wakil's causes of action. The trial court awarded el-Wakil damages of $11,233.00—the full amount el-Wakil had paid for both his and Ali's purchase of the vehicle—plus attorney's fees, costs, and post-judgment interest; however, the trial court did not order the return of the car.

Khechana and Casba moved for a new trial, but the trial court granted the motion only as to Casba. El-Wakil then moved to non-suit Casba, and the order granting the non-suit became the new final judgment in the case.

Khechana again moved for a new trial and supported his second motion with evidence that after judgment was first rendered in the case, el-Wakil sold the Nissan to Naved Ahmed. In his response, el-Wakil agreed that he had sold the car.

Khechana's second motion for new trial was overruled by operation of law. Although Khechana timely requested findings of fact and conclusions of law, and

timely notified the trial court that the requested findings and conclusions were past due, the trial court issued none.

On appeal, Khechana first argues that the case became moot before it was tried. In the alternative, he asks that we abate the appeal for the trial court to issue findings of fact and conclusions of law. Finally, he argues that there is legally and factually insufficient evidence of liability and damages.

## II. MOOTNESS

A case becomes moot when the court's action on the merits cannot affect the parties' rights or interests, as, for instance, when a justiciable controversy between the parties ceases to exist, or the parties no longer have a legally cognizable interest in the outcome. *See Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 162 (Tex. 2012). Khechana maintains that the case became moot when el-Wakil received title to the car about six weeks before the case was tried.

We disagree that issuance of title was sufficient to render the case moot before trial, for at that time it was still possible that el-Wakil would present evidence that Khechana caused the delay in obtaining title and that the delay harmed el-Wakil. *See Abbott v. Mexican Am. Legis. Caucus, Tex. House of Representatives*, 647 S.W.3d 681, 689 (Tex. 2022) (a case is moot when it is "*impossible* for a court to grant *any* effectual relief whatever to the prevailing party." (quoting *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 161, 136 S. Ct. 663, 193 L. Ed. 2d 571 (2016))) (alterations in original). Moreover, el-Wakil's petition did not connect his claims for violations of the DTPA, fraud, and breach of contract to any of his factual allegations, but some of those claims could not have been based on the delay in obtaining title.[2] Given this

---

[2] To cite just two examples, el-Wakil alleged that Khechana violated the DTPA in that he "represented that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" and "represented that work or services have been performed on, or parts replaced in, goods when the work or services were not performed or

gap in the factual allegations, to which Khechana did not specially except, we cannot say that the issuance of title was itself sufficient to deprive the trial court of jurisdiction. *See Heckman*, 562 S.W.3d at 6 (a court loses jurisdiction when a case becomes moot).

### III. ABSENCE OF FACTUAL FINDINGS

If findings of fact and conclusions of law have been properly requested, the trial court has a mandatory duty to file them. *Zieba v. Martin*, 928 S.W.2d 782, 786 (Tex. App.—Houston [14th Dist.] 1996, no writ) (op. on reh'g). A trial court's failure to fulfill this duty is presumed harmful unless the record affirmatively shows that the complaining party suffered no injury. *Id.* The appellant is harmed if there are two or more possible grounds on which the court could have ruled and the appellant is left to guess the basis for the trial court's ruling. *Id.* If the error is harmful, the preferred remedy is for the appellate court to abate the appeal and direct the trial court to file the missing findings. *Ad Villarai, LLC v. Chan Il Pak*, 519 S.W.3d 132, 136 (Tex. 2017) (per curiam). If the trial court still fails to issue findings, the appellate court must reverse the judgment and remand the case for a new trial. *Id.*

Here, Khechana properly requested factual findings and timely notified the trial court that the findings were past due. The trial court did not issue them, and "the preferred remedy is for the appellate court to direct the trial court to file the missing findings" and to reverse and remand the case for new trial if the trial court fails to do so. *Id.* at 135–36. But "when a party presents multiple grounds for reversal of a judgment on appeal, the appellate court should first address those points that would afford the party the greatest relief." *Bradleys' Elec., Inc. v. Cigna Lloyds Ins. Co.*,

---

the parts replaced." *See* TEX. BUS. & COM. CODE § 17.46 (b)(7), (b)(22). A delay in obtaining title would not support either of these claims.

995 S.W.2d 675, 677 (Tex. 1999) (per curiam) (citing TEX. R. APP. P. 43.3). Thus, appellate courts generally decide rendition issues before remand issues. *Id.*

In accordance with that principle, Khechana asks that, "to avoid the inefficiencies and costs of remand," we first consider his challenges to the legal sufficiency of the evidence of causation and damages, because if he is entitled to rendition of judgment on those grounds, remand would be unnecessary. We therefore address legal sufficiency next.

## IV. LEGAL INSUFFICIENCY OF THE EVIDENCE

When a finding is challenged for legal sufficiency, we review the evidence in the light most favorable to the finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable fact finder could, and disregard contrary evidence unless a reasonable fact finder could not. *Id.* at 827. The evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the verdict under review. *Id.*

Causation and damage are essential elements of each of el-Wakil's causes of action. Under the DTPA, a plaintiff must show that a violation of the DTPA was "a producing cause of economic damages or damages for mental anguish." TEX. BUS. & COM. CODE § 17.50(a). To be a producing cause, the DTPA violation must be "a substantial factor in bringing about the injury, without which the injury would not have occurred." *Metro Allied Ins. Agency, Inc. v. Lin*, 304 S.W.3d 830, 834 (Tex. 2009) (per curiam). In a breach-of-contract claim, "actual damages may be recovered when loss is the natural, probable, and foreseeable consequence of the defendant's conduct." *Mead v. Johnson Grp.*, 615 S.W.2d 685, 687 (Tex. 1981). And common-law fraud requires proof that the plaintiff was injured by justifiably relying either on the defendant's false material representation or the defendant's nondisclosure of a

7

material fact that the defendant had a fiduciary duty to disclose. *See Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 219–20 (Tex. 2019) (fraud by nondisclosure); *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018) (fraud by material misrepresentation). The causation standards for all of these causes of action include causation-in-fact, also referred to as "but-for" causation. *See Ryder Integrated Logistics, Inc. v. Fayette Cnty.*, 453 S.W.3d 922, 929 (Tex. 2015) (per curiam). And causation-in-fact is just another term for producing cause. *See id.* (defendant's conduct is a cause-in-fact of the plaintiff's injury if the conduct is "a substantial factor in causing the injury and without which the injury would not have occurred").

Here, however, there is no evidence that Khechana caused the delay in the issuance of title. Khechana could not issue title himself; he could only apply "in the name of the purchaser of the vehicle" for title. *See* TEX. TRANSP. CODE § 501.0234. The title application is submitted to the county tax assessor-collector, who forwards the application to the Department of Motor Vehicles. *Id.* § 501.027. The Department then determines whether to issue title. *Id.* "An interested person aggrieved by a refusal" to issue title may have the decision reviewed by the county assessor-collector. *Id.* § 501.052.

Khechana submitted the application on el-Wakil's behalf, and the Department initially refused to issue it. Both el-Wakil and Khechana testified that the title application was initially refused because Ali had alleged that the transfer of the vehicle to el-Wakil was fraudulent, but el-Wakil has never contended or offered any evidence that Ali's complaint was valid. Indeed, the record does not even show what exactly Ali's complaint was. We know only that after this suit was filed, Khechana emailed the Texas Department of Motor Vehicles and asked "why there's a hold" on the application for title to be issued to el-Wakil, and that an investigator for the

Department responded, "This sales transaction is disputed [by Ali] as possibly involving fraud."[3] El-Wakil offered no evidence, made no argument, and pleaded no theory of liability under which Khechana could be held responsible for Ali's conduct in making the unspecified complaint.

Nor is there any evidence that el-Wakil was damaged by the delay in obtaining title. The title dispute did not interfere with his ability to register the vehicle, obtain license plates for it, or drive it, and he did all of these things. He might have needed the title to sell the vehicle, but even after the title dispute was resolved administratively, he waited a further five months before selling the car. In the absence of evidence that el-Wakil was harmed by the delay, there is no basis for the award of damages.

We sustain Khechana's third issue.

## V. CONCLUSION

There is legally insufficient evidence that Khechana caused the delay in obtaining clear title to the vehicle or that the delay harmed el-Wakil. Each of these reasons is independently sufficient to require reversal, and we accordingly reverse the judgment and render judgment that el-Wakil take nothing by his claims.


/s/    Tracy Christopher
Chief Justice

Panel consists of Chief Justice Christopher and Justices Wise and Hassan.

---

[3] This material was attached to Khechana's pleading, but el-Wakil had it admitted into evidence at trial.

9