**Affirmed and Memorandum Opinion filed December 1, 2011.**



In The

# Fourteenth Court of Appeals

————————————

## NO. 14-11-00067-CV

————————————

## WILFREDIS SANTOS AND SANTOS AUTO SALES, INC., Appellants

## V.

## I LONE STAR AUTO PARTS, LTD. AND SAHAMI, LLC, Appellees

**On Appeal from the 190th District Court
Harris County, Texas
Trial Court Cause No. 2009-75682**

## MEMORANDUM OPINION

In this dispute over liability for a vehicle fire, appellants Wilfredis Santos and Santos Auto Sales, Inc. argue that the trial court abused its discretion in striking the evidence they offered in response to a motion for summary judgment. They acknowledge that they produced no expert evidence of causation, but argue that it was not required on the facts presented here. We disagree. Because the defendants were entitled to summary judgment in the absence of such expert evidence, we affirm the judgment without addressing the remaining issues.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In 2009, Wilfredis Santos bought a 1997 Mercedes-Benz automobile from Santos Auto Sales, Inc.; we refer to these parties collectively as "Santos."   A year later, Santos had the nonfunctioning vehicle towed to the repair shop operated by Lone Star Auto Parts Ltd.   There, Santos purchased a larger replacement engine and Lone Star installed it. While Lone Star's 90-day warranty was in effect, Santos repeatedly brought the car back for repairs.   Approximately an hour after Santos last drove the car away from the shop, the vehicle caught fire.

Santos sued Lone Star[1] for negligence, breach of contract, and for breach of a warranty under the DTPA.   Under the trial court's docket control order, Santos was required to designate an expert witness by September 6, 2010, but he failed to do so.   Lone Star moved for summary judgment on the grounds that, *inter alia*, there was no evidence of causation.   Santos responded, but the trial court sustained Lone Star's objections to the evidence, granted Lone Star's motion to strike the evidence, and granted the motion for summary judgment.

## II.  ISSUES PRESENTED

In his first two issues, Santos contends that the trial court abused its discretion in striking his summary-judgment evidence.   In his third issue, he argues that the trial court should have considered all of his evidence and denied summary judgment because the material constituted more than a scintilla of evidence of causation.   Because Santos's third issue is dispositive, we do not address his first two appellate issues.

---

[1] The plaintiffs also sued Lone Star's general partner, Sahami, LLC.   We refer to both companies collectively as "Lone Star."

## III. STANDARD OF REVIEW

We review summary judgments de novo. *Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 644 (Tex. 2009) (per curiam) (citing *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007)). We consider the summary-judgment record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the movant. *See City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). We must affirm the summary judgment if any of the movant's theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

In a no-evidence motion for summary judgment, the movant represents that there is no evidence of one or more essential elements of the claims for which the nonmovant bears the burden of proof at trial. TEX. R. CIV. P. 166a(i); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The burden then shifts to the nonmovant to present evidence raising a genuine issue of material fact as to the elements specified in the motion. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). We review the evidence presented by the motion and response in the light most favorable to the nonmovant, crediting evidence favorable to that party if a reasonable juror could, and disregarding contrary evidence unless a reasonable juror could not. *Id.* (citing *City of Keller*, 168 S.W.3d at 827 and *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 208 (Tex. 2002)). We sustain a no-evidence summary judgment when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *City of Keller*, 168 S.W.3d at 810. The evidence is insufficient if "it is 'so weak as to do no more than create a mere surmise or suspicion'" that the

3

challenged fact exists. *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 115 (Tex. 2009) (quoting *Kroger Tex. L.P. v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006)).

## IV. ANALYSIS

We need not address Santos's first two issues. Even if, as Santos contends, the trial court abused its discretion by permitting Lone Star to raise objections after the summary-judgment hearing, by refusing to allow Santos time to cure any objections to the form of the evidence, and by striking Santos's evidence, any such error was harmless. Because the evidence Santos sought to introduce was insufficient to raise a question of fact on the issue of causation, the outcome would have been the same even if every exhibit were admitted without objection.

To prevail in his negligence, warranty, and DTPA claims, Santos was required to prove that Lone Star's acts or omissions were the cause-in-fact of the vehicle fire. *See, e.g.*, *Metro Allied Ins. Agency, Inc. v. Lin*, 304 S.W.3d 830, 835 (Tex. 2009) (cause-in-fact must be proved to recover for alleged DTPA violations); *Mack Trucks, Inc.*, 206 S.W.3d at 582 (claims of negligence and breach of warranty require proof of causation-in-fact). To prove causation-in-fact, the plaintiff must establish that the complained-of conduct or condition was "a substantial factor in bringing about the injury and without which the harm would not have occurred." *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 481 (Tex. 1995). To recover consequential damages for the loss of the vehicle under his breach-of-contract theory of liability, Santos similarly was required to prove that such damages were the "natural, probable, and foreseeable consequence of the defendant's conduct." *See Mead v. Johnson Group, Inc.*, 615 S.W.2d 685, 867 (Tex. 1981); *accord*, *Stuart v. Bayless*, 964 S.W.3d 920, 921 (Tex. 1998) (per curiam).

4

Expert testimony generally is needed to establish the cause of a vehicle fire. *See Mack Trucks, Inc.*, 206 S.W.3d at 582–83 (lay juror's general experience and common knowledge does not extend to determining the cause for a vehicle fire's first ignition or the source of the fuel that burned; statement by opposing expert witness that it was possible that a battery cable arced and ignited the fire held insufficient to defeat summary judgment); *Gen. Motors Corp. v. Iracheta*, 161 S.W.3d 462, 470–72 (Tex. 2005) (mere possibility that fire in truck occurred in manner plaintiff suggested was not enough to support jury's findings). To defeat summary judgment, Santos was required to produce expert testimony that Lone Star's acts or omissions were not merely a possible cause of the fire, but were the probable cause of the fire. *See Mack Trucks*, 206 S.W.3d at 583; *see also Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004) (expert testimony suggesting that vehicle fire was caused by an electrical malfunction in the engine compartment held insufficient to defeat summary judgment where expert failed to rule out other causes). The evidence Santos offered fell far short of the requirement.

Santos produced no expert testimony; moreover, he admittedly failed to designate a testifying expert on causation. The only evidence that addresses any connection between Santos and Lone Star is the deposition of Ramin R. Sahami, who testified as follows:

- Santos hired Lone Star to install an engine block in his vehicle. The car was not running at the time, and was towed to Lone Star.

- To install the new engine, one must remove "everything," remove the old engine, install the new engine, and attach to the new engine those components that previously were attached to the old engine. These include not only the wire harness, but also the air conditioning compressor, the power steering pump, the fan clutch, fan blade, and fan belt.

- Lone Star informed Santos that it offered no warranty on the wiring, which was already in the vehicle. Lone Star does not warrant the components that the customer already owns.

5

- Lone Star knew that some Mercedes-Benz vehicles manufactured between 1994 and 1999 had defective wire harnesses. Some cars were affected and others were not.

- The mechanic who installed the engine was aware that some Mercedes-Benz vehicles had problems with wire harnesses, but was not aware of such a problem with Santos's vehicle.

- If the wiring is deteriorated, then moving the harness around to change engines can cause the wires to contact one another.

- Sahami did not know whether Mercedes-Benz used the same materials on all the cars.

- He did not know what caused the wire harness to deteriorate.

- To inspect the wire harness, the insulation must be cut open with a razor blade so that the wires inside can be examined.

- Lone Star was not asked to inspect the wiring when installing the engine block and did not do so.[2]

---

[2] Santos attempted to support his appellate arguments with representations about the evidence that mischaracterize the record or even directly contradict it. As to the evidence regarding inspection, for example, Santos incorrectly stated in his brief, "It is undisputed that in installing the engine, Defendants 'inspected the car thoroughly' and '[d]uring the course of this inspection . . . observed that the wire harness of the vehicle had deteriorated." In fact, it is undisputed that Lone Star did *not* inspect the car as described; that it was not asked to do so; and that it did not discover that Santos's vehicle had a wire-harness defect until Santos complained of electrical problems. The language that Santos quoted in his brief was taken from the "factual background" section of Lone Star's summary-judgment motion in which Lone Star explained that the inspection was performed, and the deterioration of the wire harness discovered, not when the engine was first installed, but when Santos brought the vehicle back with additional complaints. Specifically, Lone Star described the replacement of the engine, and continued as follows:

> *Thereafter*, plaintiff's [sic] complained of an oil leak in the vehicle. Lone Star inspected the car thoroughly *to determine the source of the oil leak*. During the course of this inspection, it was observed that [the] wire harness of the vehicle had deteriorated. *Lone Star advised plaintiffs of the problem with the wire harness* but as far as is known to Lone Star, they took no action to repair it.

(emphasis added). It therefore appears that Santos simply wrote a statement that was directly contradicted by the record, sprinkled it with phrases taken out of context from a narrative that actually was unfavorable to him, and represented the result to this court as an undisputed fact.

- After Lone Star installed the engine, Santos brought it back two or three times for malfunctions such as flickering lights, backfiring, and intermittently sluggish performance. When Santos brought the car back and reported these issues, Lone Star inspected the wire harness and discovered the deterioration.

- In total, Santos brought the vehicle to Lone Star four times. Lone Star informed Santos "numerous times" of the wire-harness problem and told him that he needed to have a new wire harness installed, but Santos refused to do so.[3] Installing the wire harness would cost about $1200.

- One of the times that Santos brought the car in, Lone Star repaired an oil leak that was covered under the warranty Lone Star provided when it installed the engine, but a new wire harness was not covered by the warranty.

- Sahami does not know what caused the fire. It could have been caused by many things, including a punctured fuel line.[4]

- No one inspected the vehicle after the fire to determine its cause.

Santos's arguments for reversal are based on mischaracterizations of the record and on the logical fallacy of *post hoc ergo propter hoc*, that is, "after this, therefore because of this." In particular, he points out the unremarkable fact that the vehicle never caught fire until after Lone Star replaced the engine. But as the Supreme Court of Texas has indicated, it is for such reasons that "[c]are must be taken to avoid the *post hoc ergo*

---

We regret the necessity of reminding counsel that the Texas Disciplinary Rules of Professional Conduct, to which all Texas attorneys are subject, expressly provide that "[a] lawyer shall not knowingly . . . make a false statement of material fact or law to a tribunal . . . ." TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 3.03(a)(1), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (West 2005).

[3] In his appellate brief, Santos states that "denies he was ever so warned [that the wire harness was defective]" and "the evidence is disputed as to whether the Defendants warned Santos about the danger . . . ." But in reality, the opposite is true: the evidence is uncontroverted that Santos was warned "numerous times" about the defective wire harness and refused to authorize its replacement. The record directly contradicts the statement in Santos's brief that "Ramin R. Sahami testified that Defendants knew about the alleged wire harness defect and failed to alert Plaintiffs about it prior to working on the vehicle, or even after re-installing the engine."

[4] According to Santos, Lone Star asserted in its summary-judgment motion that a defective wire harness caused the fire. In fact, Lone Star asserted that such a defect exists, was present in Santos's vehicle, and was capable of causing the fire, but Lone Star did not assert that it did so in this instance.

*propter hoc* fallacy, that is, finding an earlier event caused a later event merely because it occurred first. Stated simply, correlation does not necessarily imply causation." *Jelinek v. Casas*, 328 S.W.3d 526, 533 (Tex. 2010). Circumstances such as these may raise the suspicion that the earlier event caused the later event, but "suspicion has not been and is not legally sufficient to support a finding of legal causation." *Guevara v. Ferrer*, 247 S.W.3d 662, 668 (Tex. 2007). To illustrate the problem with this reasoning, consider the uncontroverted testimony that one of Santos's relatives telephoned Sahami after the fire and told him that Santos had been threatening to burn the vehicle.[5] The fact that the fire occurred after such a threat was made is not evidence that Santos caused the fire, just as the fact that the fire occurred after Lone Star replaced the engine is not evidence that Lone Star caused the fire. The same can also be said of every event that preceded the fire. The vehicle burned after Santos drove it on a certain street, and after a particular brand of motor oil had been added to the engine, and after gasoline from a certain station had been added to the tank. This is not evidence that the street, the motor oil, or the gas station caused the fire.

Finally, even if one could infer that a wire-harness defect caused the fire, Santos produced no evidence that Lone Star sold the wire harness, improperly reinstalled it, or caused the defect. To the contrary, a reasonable factfinder could not disregard the uncontroverted evidence that the wire harness was part of the car before it was brought to Lone Star, and when Lone Star replaced the engine, it simply removed and reinstalled the wire harness. When Santos complained of electrical problems, Lone Star inspected the vehicle, discovered the problem, and repeatedly told Santos that the wire harness needed to be replaced, but Santos refused to authorize the work. There is no evidence that repair or

---

[5] We point out this testimony solely for illustrative purposes, and emphasize that such testimony could not be considered as supporting summary judgment. In our de novo review of the summary-judgment record, we disregard evidence unfavorable to the nonmovant if a reasonable factfinder could do so. The evidence that Santos threatened to burn the vehicle is unfavorable, and a reasonable factfinder could disregard it.

replacement of the wire harness fell within the scope of the work that Lone Star was asked to perform.

In sum, there is less than a scintilla of evidence that anything Lone Star did or failed to do caused the fire; thus, we overrule Santos's third issue.

## V. CONCLUSION

Because the evidence offered by Santos did not raise a fact issue on the element of causation, any error in excluding the evidence was harmless. We therefore affirm the summary judgment without considering the remaining issues.


/s/  Tracy Christopher
    Justice


Panel consists of Chief Justice Hedges and Justices Anderson and Christopher.

9